THE NEW YORK MORTGAGE COMPANY, Respondent, *v.* JULIUS GARFINKLE, also Referred to as JULIUS GARFINKEL, and Others, Appellants, Impleaded with ALEXANDER ZUBALSKY and Others, Defendants.

Third Department, January 14, 1931.

*Benjamin Cosor* [*Ellsworth Baker* of counsel], for the appellants.

*Jasie & Solomon* [*William Solomon* and *Daniel Levy* of counsel], for the respondent.

DAVIS, J. The plaintiff has judgment of foreclosure and sale of a mortgage on certain real property in Sullivan county. The defense of usury was disallowed.

The owners of the property in question were Julius Garfinkel and Harry Auerbach. In 1926 there were four outstanding mortgages on the property the amount of which is not stated. In addition they were owing Alexander Zubalsky $3,000 to $4,000. The owners wished to obtain a loan of $28,000 to refund the mortgages and pay obligations. Zubalsky, a brother-in-law of Garfinkel, was acquainted with Henry H. Rosinoff, the president and chairman of the executive committee of the plaintiff, and had previously done business with the corporation. In the autumn of 1926 the owners undertook to negotiate through Zubalsky for a loan, stating that $28,000 was needed and offering a mortgage as security. Rosinoff demanded a bonus of five per cent a year if the money was to be loaned for three years. The defendants were informed that they must give a mortgage for $33,000 if they wished to obtain a loan of $28,000 for three years. To this they assented.

Officers of the company besides Rosinoff were Charles Focht, the chairman of the approval committee, who was also a director of the corporation, and Abraham D. Levenson, a director who was also the general counsel for the company and given by the directors sole authority to pass upon the legality of mortgage loans. The plaintiff is a New York corporation, but where its offices are located is not stated. Rosinoff and Focht went to Sullivan county with Zubalsky and Garfinkel and made an inspection of the premises. The bargain was again discussed by Rosinoff and Zubalsky in the presence of Garfinkel. The matter of investigating title and discharging existing mortgages was left in the hands of the Title and Mortgage Guaranty Company at Monticello. When the deal was to be closed the corporation gave its check to a Hoboken bank and a cashier's check for $33,000 was sent to the title company, whose duty it was to distribute the same in the discharge of mortgages and otherwise as instructed.

The owners duly executed a bond and mortgage for $33,000 at Monticello on December 7, 1926. These instruments were

in form payable to Zubalsky as mortgagee. The same day Zubalsky executed an assignment thereof to the plaintiff. Zubalsky did not know until the time of closing that he was to be named mortgagee. This was at the request of Rosinoff. Zubalsky advanced no money and received no consideration for the assignment. He was a mere dummy in the transaction. It appears that of the money in the hands of the title company, $26,018.16 was paid out in the discharge and satisfaction of the underlying mortgages and the expenses incident to the transaction. The mortgagors received nothing directly. Of the $33,000 sent to the title company there then remained a balance of $6,981.84. According to instructions the title company made out a check for this amount to Zubalsky, but sent it directly to Rosinoff. This check was taken by Rosinoff to the office of Levenson. Zubalsky was called in and he indorsed the check. There was a surplus above the five per cent annual bonus, and $1,771 in cash was turned over to Zubalsky, who credited the same on the debt owing him by the mortgagors. Two hundred and sixty dollars was paid to Levenson as his fee in the matter; and the balance of $4,950.84 remained in the hands of Rosinoff.

With little dispute in the facts as above stated the learned trial justice drew the inference that there was no usury because the bonus was not traced directly into the coffers of the corporation, and it was not established that the corporation had knowledge of the usurious exaction. We reach a different conclusion.

Where an individual wishes to invest money through an agent, the integrity of the loan is not affected by the act of the agent in charging usury, unless the lender has knowledge of the transaction or assents to it or receives some benefit from it. (*St. John* v. *Fowler*, 229 N. Y. 270, 273.) We think the rule is different in the case of a corporation, which cannot act or acquire knowledge except through its officers and agents. Here we have a continuous transaction undertaken and carried on by authorized officers in its behalf and interest. Its terms were prearranged and understood, and were departed from only in unimportant details like that of making Zubalsky mortgagee. At no time was anything said about a fee or profit to the officers individually. Payment to the executive officers in the regular course of the transaction presumptively is payment to the corporation, and the knowledge of the officers is constructively its knowledge. (*Holden* v. *N. Y. & Erie Bank*, 72 N. Y. 286; *Village of Port Jervis* v. *First Nat. Bank*, 96 id. 550; *Cragie* v. *Hadley*, 99 id. 131; *Ring* v. *L. I. Real Estate Exchange*, 93 App. Div. 442; affd., 184 N. Y. 553; *Phillips* v. *U. S. Fidelity & Guaranty Co.*, 200 App. Div. 208, 225; affd., 234 N. Y. 618; *McCaskill*

*Co.* v. *United States,* 216 U. S. 504; *Maryland Trust Co.* v. *National Mechanics Bank,* 102 Md. 608, 629; *McCarthy* v. *Liberty Nat. Bank,* 73 Okla. 275; 175 Pac. 940; 7 A. L. R. 137.)

Both Rosinoff and Levenson were clothed by the corporation with full authority to act. In dealing with them any person had a right to assume that he was dealing with the corporation in any transaction in which the corporation had an interest or was to receive a benefit. In no other way was it possible to have dealings with that impersonal entity. The mortgagors were not to be held responsible if the officers should convert the money payable to the corporation. (*McCarthy* v. *Liberty Nat. Bank, supra.*) No attempt was made on the trial to call these officers to prove that the taking of the bonus was a personal transaction. In fact, the only proof that the corporation did not actually receive the bonus was the production of a book kept by the plaintiff and containing a record of the mortgage, in which it did not appear that the money was received. This was practically no proof at all. It is not likely that entry of an illegal transaction would be made in the records. No excuse for the absence of these witnesses is contained in the record. . The only excuse offered here by counsel on the argument was that these witnesses were not now officers of the corporation and lived in New Jersey. There is no reason why their depositions could not have been taken if their evidence would have been helpful to the plaintiff in sustaining the validity of its mortgage. The attitude of the representatives of plaintiff on the trial was not frank but obstructive; and the entire atmosphere is suggestive of furtive illegality and concealment.

The devious methods employed to conceal the taking of an illegal gain, including the use of a dummy, will not avail the plaintiff if the court may discover the true transaction. (*Silverstein* v. *Taubenkimmel,* 209 App. Div. 710; *Schanz* v. *Sotscheck,* 160 id. 798.)

We think the whole transaction was so tainted with usury as to render the bond and mortgage void, and the mortgage should be discharged of record. (Gen. Bus. Law, § 373; *Laskowitz* v. *Getzowitz,* 211 App. Div. 239.) Certain findings will be reversed and new findings made.

The judgment should be reversed on the law and the facts, with costs, and the complaint dismissed, with costs. The defendant should have judgment discharging the mortgage and canceling it of record.

Findings of fact numbers "eight" and "nine" are reversed, and the conclusions of law disapproved. This court makes new findings as follows: Defendants' proposed findings of fact numbers "fifth," "ninth," "fourteenth," "fifteenth," "sixteenth," "seven-

teenth," " eighteenth," " nineteenth," " twenty-first," " twenty-second," " twenty-third," and " twenty-sixth; " and conclusions of law " first," " second," " third," and " fourth."

All concur.

Judgment reversed on the law and the facts, with costs, and complaint dismissed, with costs. Judgment is rendered in favor of the defendants discharging the mortgage and canceling it of record.

Findings of fact numbers " eight " and " nine " are reversed, and the conclusions of law disapproved. This court makes new findings as follows: Defendants' proposed findings of fact numbers " fifth," " ninth," " fourteenth," " fifteenth," " sixteenth," " seventeenth," " eighteenth," " nineteenth," " twenty-first," " twenty-second," " twenty-third " and " twenty-sixth; " and conclusions of law " first," " second," " third " and " fourth." ■