**Phillip J. McNELLIS, Trustee of Donald S. Potter, Bankrupt, individually and d/b/a Potter Real Estate Co., et al., Plaintiff-Appellant,**

**v.**

**Isadore RAYMOND, Defendant-Appellee.**

**No. 233, Docket 33956.**

United States Court of Appeals
Second Circuit.

Argued Dec. 1, 1969.

Decided Jan. 13, 1970.

Laurence F. Sovik, Syracuse, N. Y. (Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer, Syracuse, N. Y., on the brief), for plaintiff-appellant.

Dante M. Scaccia, Syracuse, N. Y. (Love, Balducci & Scaccia, Syracuse, N. Y., on the brief), for defendant-appellee.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

In May 1963, Donald S. Potter, his father Jackson M. Potter, and Potter Securities Corporation were all adjudicated bankrupt, and plaintiff Phillip J. McNellis was appointed trustee. Since then, plaintiff has been trying to recover assets for the estates, primarily on the theory that various loans repaid by Donald Potter were usurious. Aspects of these attempts have been before us several times.[1] .This latest appeal again presents what one judge, familiar with the bankruptcy proceedings in the district court, called "the problem of searching for the needles of fact in a haystack of statements and colloquy of counsel."[2] Plaintiff trustee appeals from an order of William H. Timbers, J.,[3] which dismissed various causes of action asserted against defendant Isadore Raymond, a money lender. We affirm in part and reverse in part, for reasons explained more fully below.

The trustee's action in this case is brought to recover payments made by Donald S. Potter. From the record and the thorough findings of the district judge, 287 F.Supp. 232 (N.D.N.Y.1968), the facts are as follows: Donald did business as a real estate broker under the name of Potter Real Estate Company, a single proprietorship. Jackson, who was not a licensed real estate broker, acted as consultant and finance manager for Potter Real Estate. Jackson owned 49 out of 50 shares of Potter Securities Corporation and was its president and treasurer. Donald was not an officer, director or shareholder of the Corporation. Each of the entities mentioned above acted together as a unit in business enterprises—there was only one office, one set of records, and one bank account (in the name of Potter Real Estate) for all. Transfers of property from one to the other without consideration were the norm. Between January 10, 1958 and March 1, 1962, defendant Raymond received the proceeds of 294 checks drawn on the account of Potter Real Estate as loan repayments totalling $582,637.90 (principal—$527,205.78; interest—$55,432.12). During this entire period Donald Potter (and therefore Potter Real Estate) was insolvent.

The trustee's original complaint refers to the loans and interest payments noted above and contains two causes of action. As to the first, the complaint alleges that:

> Said loans were usurious and void and all payments thereon, in excess of 6% per annum were without consideration and in violation of the Debtor and Creditor Law of the State of New York and the Acts of Congress relating to Bankruptcy.

1. See McNellis v. Merchants Nat'l Bank & Trust Co., 390 F.2d 239 (2d Cir. 1968), and 385 F.2d 916 (2d Cir. 1967); Dubnoff v. Goldstein, 385 F.2d 717 (2d Cir. 1967); In re Potter, 367 F.2d 513 (2d Cir. 1966); McNellis v. First Fed. Sav. & Loan Ass'n, 364 F.2d 251 (2d Cir.), cert. denied, 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966).

2. Edmund Port, J., quoted in In re Potter, supra note 1, 367 F.2d at 515.

3. Chief Judge of the District of Connecticut, sitting by designation in the United States District Court for the Northern District of New York.

The second cause of action is identical to the first except that it claims that:

> Said loans were usurious and void and all payments thereon, both principal and interest, were without consideration and in fraud of said creditors of Donald S. Potter.

Thus, both the first and second causes of action in the original complaint allege that payments by Donald to defendant Raymond on usurious loans were "without consideration"; the only difference between the two causes of action is that the former seeks recovery only of interest payments over six per cent, while the latter asks for recovery of all payments ($582,637.90), concluding principal and otherwise legal interest.

As an affirmative defense, Raymond pleaded that the loans were not usurious because the transactions were all with Jackson Potter as agent for one or more corporations. Thereafter, the trustee filed a supplemental complaint making use of this alleged admission by Raymond. The new theory was that since the loan transactions were with Jackson and the Corporation and not with Donald, the latter had no obligation to repay the loans; therefore, the payments to Raymond by Donald were for this additional reason "without consideration in fraud of his creditors."

## I.

Judge Timbers considered these claims in two steps. In early 1968, there was a six-day trial on the theory first advanced in the supplemental complaint; i. e., seeking the full sum ($582,637.90) paid by Donald to Raymond on the ground that the payments were transfers without consideration because Donald was not obligated on the loans. In July 1968, the judge denied this claim. He found that various essential elements of the trustee's fraudulent conveyance claim had been satisfied, e. g., Donald's insolvency at the time of his payments to Raymond. However, the requirement that the transfers be made without fair consideration was not

met. As to this, the judge concluded that "Jackson, Donald, Potter Securities [Corporation] and Potter Real Estate constituted a single operation," that

> [t]here is substantial evidence which establishes an identity of interest between Potter Securities and Donald, and from which the inference is inescapable that Donald was not a volunteer in making the payments in question to Raymond

and that "Donald had the full benefit of Raymond's loans to the Potter complex." 287 F.Supp. at 238, 239. There is substantial evidence to support these findings. Based upon them, we agree with the judge's conclusion that payments by Donald on loans made to the Corporation were for fair consideration.

The trustee argued in the district court that Raymond was taking inconsistent positions—that the corporate veil should be pierced to identify Donald Potter with the Corporation as a beneficiary of the loans to it, but that the corporate form should be held inviolate on the usury claim. Judge Timbers acknowledged that there was an inconsistency "at first blush" but went on to say that

> the form of the transaction may be controlling for one purpose, but not for another. Here, while the corporate veil may not be pierced in determining whether the loans were usurious, the corporation and the men behind may be recognized as one for the purpose of repayment.

*Id.* at 239.

Again, we agree with the trial judge. We have already stated quite plainly that under New York law, even where

> [t]he Corporation may have been a device to provide financing at rates that would otherwise have been usurious * * *. [T]his is irrelevant so long as the loan was in form and in fact made to the Corporation.

McNellis v. Merchants National Bank & Trust Co., *supra*, 390 F.2d at 243. New York has, in effect, endorsed the use of corporations in this way to secure loans

at interest in excess of the six per cent legal rate and, in fairness to those who lend the money, deprived corporations of the usury defense. The fact that the sum loaned eventually benefited an individual does not negate that policy, see, e. g., Hoffman v. Lee Nashem Motors, Inc., 20 N.Y.2d 513, 285 N.Y.S.2d 68, 231 N.E.2d 765 (1967), although it bears on the equity of refusing to allow that individual or his bankruptcy trustee to set aside a repayment by him on the ground that he had no proper reason to make it. Accordingly, the judge did not commit error in dismissing the trustee's claim that Donald improperly paid the debt of the Corporation. To that extent, we affirm.

## II.

During the course of his opinion on the first phase of the case, Judge Timbers noted that Raymond produced checks at trial, which indicated that at least $268,133.04 was loaned to Donald Potter personally or to Potter Real Estate. Thus, at least as to that sum of money, usury would be a highly relevant issue, since an individual, unlike a corporation, can raise the defense of usury. The checks directly contradicted Raymond's answer and other representations that he had had no dealings with Donald; these had led, as the judge put it, to the trustee's "abandonment" of the usury claim. Because Raymond had thus misled the trustee until the first trial, Judge Timbers permitted a new trial on the claim based on the usury theory. This took place in February 1969. Judge Timbers reserved decision, and in July 1969 dismissed the trustee's action on the ground that the one-year statute of limitations for claims to recover usurious interest[4] had run prior to the adjudication of bankruptcy. 304 F.Supp. 1172 (N.D.N.Y.1969). The trustee contends that the trial judge applied the wrong statute of limitations, and that the proper period is the six years provided by CPLR § 213(6) for actions based on fraud or mistake.[5]

■ We agree with appellant that a six-year limitation period is the appropriate one, and that the actions tied to the usury theory should not have been dismissed. It must be remembered that the trustee in bankruptcy operates in a dual capacity. He is representative of the bankrupt and, as such, is vested with various property rights and rights of action which the bankrupt may have had. Bankruptcy Act § 70(a), 11 U.S.C. § 110(a). In that capacity, as successor to the bankrupt's cause of action to recover excess interest payments, the trustee's claim would be time barred. But pursuant to section 70(e) of the Act, 11 U.S.C. § 110(e), and in his capacity as representative of the bankrupt's creditors, appellant also seeks to set aside payments on the loans as fraudulent conveyances under N.Y. Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, §§ 271–273, 278 (1945), and not under N.Y. General Obligations Law, McKinney's Consol.Laws, c. 24-A, § 5–513. Accordingly, a six-year statute of limitations is the applicable one.

The Supreme Court of Pennsylvania dealt with a virtually identical problem and held as we do. Larrimer v. Feeney, 411 Pa. 604, 192 A.2d 351 (Pa.1963). There the court found that usurious interest payments were not for fair consideration under the Pennsylvania Uniform Fraudulent Conveyance Act (we are dealing with the New York version). It went on to hold that the statute of limitations for recovery of usurious payments was inapplicable.

[T]he action in the instant case is not brought by the trustee in bankruptcy

---

4. N.Y. General Obligations Law § 5–513 (McKinney 1964). Effective July 1, 1969, the one-year limitation period for actions to recover an interest overcharge has been transferred to CPLR § 215(6) (McKinney Supp.1969).

5. Effective Sept. 1, 1966, CPLR § 213(6) is limited to actions based on mistake and § 213(9) now governs actions based upon fraud—the time period remains six years (McKinney Supp.1969). See also the six-year limitation period provided by CPLR § 213(1), which governs actions in equity.

asserting a right of the bankrupt to recover usurious interest payments. Such an action would be barred by the Act of 1858 * * * since the six month [limitation] period had passed before the instant action was brought. This action is brought by the trustee in bankruptcy on behalf of all the bankrupt's creditors to set aside fraudulent conveyances made by a *debtor while insolvent and without a fair consideration*. Hatz [the bankrupt] was insolvent and the conveyance was made without a fair consideration. The limitation of the Act of 1858 has no application.

*Id.* 192 A.2d at 354. Applying the six-year limitation period is not inconsistent with the policies behind the usury limitation. While usury unquestionably forms part of the factual basis for the trustee's cause of action, the trustee's basic theory is want of consideration for Donald's payments, and not the usury itself. See Broude, Toward a New Fraudulent Conveyance: The Trustee in Bankruptcy and the Usurious Lender, 63 Nw.U.L.Rev. 331 (1968).

Since we think that the one-year statute of limitations did not bar this aspect of the trustee's claim, we reverse the order of the trial court with respect to both causes of action in the trustee's original complaint and remand for further proceedings. We leave it to the district court to determine whether a new trial is called for on those actions or whether additional findings, with or without the further taking of evidence, will suffice. Findings should include just how much money was in fact loaned by Raymond directly to Donald Potter individually or to Potter Real Estate, how much interest was charged, and how much of that interest, if any, was usurious. We confine our holding only to the statute of limitations. The trustee still faces obstacles under New York law, and we express no view on the merits of these actions.[6]

Reversed for further proceedings consistent with this opinion.

HAYS, Circuit Judge (dissenting in part):

I feel constrained to dissent from that part of the majority opinion which holds that the trustee may recover for usury in spite of the one year limitation period prescribed by the New York statute for actions based on usury. The trustee is expressly authorized by Section 70(a) (6) of the Bankruptcy Act, 11 U.S.C. § 110(a) (6) to sue on "rights of action arising upon * * * usury." That section "equates the right of the trustee with that of the bankrupt." Austrian v. Williams, 198 F.2d 697, 701 (2d Cir.), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952). The "right of the bankrupt" to bring an action based on usury was barred by the New York statute of limitations applicable to usury at the time the bankruptcy petition was filed.

I would affirm the decision of the trial court in all respects.

---

6. See In re Potter, *supra*, 367 F.2d at 516–517. But see Broude, *supra*, especially at 333–42.